## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **WM MOBILE BAY** ) | |
| **ENVIRONMENTAL CENTER, INC.,** ) | |
|    **Petitioner,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 17-073-KD-N** |
| ) | |
| **THE CITY OF MOBILE SOLID** ) | |
| **WASTE AUTHORITY,** ) | |
|    **Respondent.** ) | |

## REPORT AND RECOMMENDATION

Currently pending before this Court is Respondent, The Solid Waste Disposal Authority of the City of Mobile's, Motion to Dismiss Plaintiff's Petition for Permanent Injunction and brief in support thereof (Docs. 8, 9) under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4). Petitioner, WM Mobile Bay Environmental Center, Inc., has filed a response to the motion (Doc. 11) to which Respondent has replied (Doc. 12). After careful consideration of the record, it is recommended that Respondent's Motion to Dismiss Petitioner's Petition be denied as to Rule 12(b)(1) and granted pursuant to Rule 12(b)(6).

## FACTUAL AND PROCEDURAL BACKGROUND

On February 10, 2017, Petitioner, WM Mobile Bay Environmental Center, Inc., ("WM Mobile Bay") filed a Petition for Permanent Injunction against Respondent, The Solid Waste Disposal Authority of the City of Mobile

("the Authority") seeking to require Authority to approve reimbursements to WM Mobile Bay for capital expenses and operational costs for the Chastang Landfill's gas management system, MAWSS surcharges for leachate pre-treatment, and leachate analytical costs, pursuant to the Solid Waste Management Contract ("Contract") dated October 6, 1993.  (Docs. 1, 9).

The Contract, which is the subject of this action, was entered into by the Authority and Transamerican Waste Industries, Inc. ("Transamerican") in 1993 and WM Mobile Bay is the successor in interest to all rights and obligations of Transamerican under the Contract.  (Doc. 1 at 2).  The Contract contains a provision relating to reimbursements for certain expenses which states in pertinent part as follows:

> Notwithstanding any provision in this Contract to the contrary, the Authority shall reimburse Contractor for any increases in Contractor's costs due to laws, rules, regulations or ordinances that become effective or have different interpretation after the date this Contract is entered into and that have an adverse impact on Contractor hereunder.

(Doc. 1 at 2;  Doc. 1-1 at 26).  WM Bay Mobile asserts that the Authority has committed a breach of this provision of the contract based on its October 12, 2013, and January 11, 2017, refusals to reimburse the Authority following the Authority's requests for reimbursement of $126,141.13 pursuant to the above provision dated April 6, 2016 (Doc. 1-2 at 2-3), and December 13, 2016, respectively.  (Doc. 1 at 3; Doc. 1-3 at 2-3).

Prior to the instant petition being filed, the parties litigated a previous lawsuit in this Court, styled *WM Mobile Bay Environmental Center, Inc. v.*

*The City of Mobile Solid Waste Authority*, Civil Action No. 13-0434-KD-N. (*Id.*)  According to WM Mobile Bay, as a result of the previous litigation, this Court held that capital expenses and operational costs for the Chastang Landfill's gas management system, MAWSS surcharges for leachate pre-treatment and leachate analytical costs were directly reimbursable to WM Mobile Bay under Section 6.6 of the Contract and awarded WM Mobile Bay $1,641,210 for the Authority's prior breaches of the subject provision.  (*Id.*) On December 2, 2016, the United States Court of Appeals for the Eleventh Circuit affirmed this Court's judgment in that action.  (*Id.* at 3-4).

On February 23, 2017, the Authority filed a Motion to Dismiss WM Mobile Bay's Petition on the grounds in sum, that (1) this Court lacked subject matter jurisdiction because the parties were not diverse, (2) WM Mobile Bay failed to state a claim upon which relief could be granted, (3) WM Mobile Bay has an adequate remedy at law, (4) WM Mobile Bay failed to comply with Section 1.20 of the contract requiring Alternative Dispute Resolution, (5) the contract made the basis of this action is void and unenforceable due to vagueness, and (6) the Authority is immune from suit pursuant to the Eleventh Amendment of the Constitution of the United States. (Docs. 8, 9, generally).  WM Mobile Bay has responded to the Authority's motion (Doc. 11) and the Authority has filed a reply (Doc. 12).

## STANDARD OF REVIEW

To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must first satisfy the pleading requirements of Rule 8(a)(2), which provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  While Rule 8 establishes a regime of "notice pleading," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 513-14, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002), it does not eliminate all pleading requirements.

First, the complaint must address all the elements that must be shown in order to support recovery under one or more causes of action.  "At a minimum, notice pleading requires that a complaint contain inferential allegations from which we can identify each of the material elements necessary to sustain a recovery under some viable legal theory." *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 960 (11th Cir. 2009) (emphasis and internal quotes omitted).

Pleading elements is necessary, but it is not enough to satisfy Rule 8(a)(2).  There must, in addition, be a pleading of facts.  The rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do" to satisfy that rule.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2009).  The complaint must allege "enough facts to state a claim for relief that is

plausible on its face." *Id.*, at 570, 127 S.Ct. 1955. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and must be a "'plain statement' possess[ing] enough heft to 'sho[w] that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 555, 557, 127 S. Ct. at 1965, 1966 (second brackets in original). But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678, 129 S. Ct. at 1949. Furthermore, the court treats as true factual allegations, but it does not treat as true conclusory assertions or a recitation of a cause of action's elements. *Iqbal*, 566 U.S. at 681, 129 S. Ct. at 1951.

When considering whether a complaint states a claim for relief, the Court "should assume, on a case-by-case basis, that well pleaded factual allegations are true and then determine whether they plausibly give rise to an entitlement to relief." *Randall v. Scott*, 610 F.3d 701, 710 (11th Cir. 2010).

## DISCUSSION

### I.    Subject Matter Jurisdiction[1]

---

[1] The Authority argues that because the "underlying claim should be dismissed, this Court need not decide this jurisdictional issue in order to dismiss the action." (Doc. 12 at 6). In support, the Authority cites *Stephens v. Department of Health and Human Services*, 901 F.2d 1571 (11th Cir. 1990) (wherein the court did not consider personal jurisdiction challenges due to the fact that Plaintiff's action was dismissed for failure to state a claim for relief.) However, the Authority's reliance on that case is misplaced. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).("When a Rule 12(b)(1) motion is filed in conjunction with

5

The Authority contends that WM Mobile Bay's Petition is due to be dismissed pursuant to Federal Rule 12(b)(1) for lack of subject matter jurisdiction because diversity of citizenship does not exist between the parties. (Doc. 9 at 6). More specifically, the Authority contends that WM Mobile Bay's principal place of business is located in Mobile County, Alabama. (*Id.*) In response, WM Mobile Bay argues that subject matter jurisdiction exists because its principal place of business is in Madison, Mississippi. [2] (Doc. 11 at 4).

> Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a party to assert the defense of lack of subject matter jurisdiction. A motion to dismiss based on lack of subject-matter jurisdiction should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Lack of subject-matter jurisdiction may be found through an examination of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts. *Id.* Because the burden of proof on a motion to dismiss for lack of subject matter jurisdiction is on the party asserting jurisdiction, the plaintiff

other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits.") (*citing to Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curiam). "This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice." *(Id.)* As a result, this Court will address whether subject matter jurisdiction exists prior to addressing whether dismissal is warranted pursuant to Rule 12(b)(6).

[2] WM Mobile Bay also asserts that the previous litigation (wherein diversity jurisdiction existed) controls the present litigation. (Doc. 11 at 3-4). In that regard, WM Mobile Bay, points out that in the previous litigation, the Authority did not dispute subject matter jurisdiction and admitted in its Answer that WM Mobile Bay was a Delaware corporation with its principal place of business in Madison, Mississippi. In reply, the Authority argues that subject matter jurisdiction can be raised at any time and asserts that the pleadings in the previous litigation do not dictate jurisdiction in this action because it is "conceivable that corporations can change the location of their principal places of business over time". (Doc. 12 at 5-6). The Authority also distinguishes the cases cited by WM Mobile Bay, by pointing out that they contained factual admissions in a complaint and not in an answer. (*Id.* at 6). Nevertheless, because the undersigned's determination that subject matter jurisdiction exists based on the relevant facts and pleadings in *this* action, a discussion of the effects of the pleadings and admissions in the previous litigation is not warranted.

"constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* at 161 (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995) and *Menchaca v. Chrysler Credit Corp*, 613 F.2d 507, 511 (5th Cir. 1980)).

Attacks on subject-matter jurisdiction take two forms: (1) facial attacks, and (2) factual attacks. *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (*citing Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)). Facial attacks on a complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion." *Lawrence,* 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511). Factual attacks challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (same).

If a defendant makes a factual attack upon the court's subject matter jurisdiction, submitting evidentiary materials, the plaintiff is "also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

[A] plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000) (quoting *Colonial Pipeline Co. v. Collins,* 921 F.2d 1237, 1243 (11th Cir. 1991)). "Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction." *Morrison,* 228 F.3d at 1273 (quoting *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)).

*Equal Employment Opportunity Commission v. Labor Solutions of Ala., LLC*,

2017 WL 1035682, at *1-2 (N.D. Ala. March 17, 2017).

The Authority is making a factual attack on jurisdiction. In support of its attack, the Authority states that WM Mobile Bay was formally known as Chastang Landfill and argues as follows:

> The sole function of WM's business, however, was the operation of the Chastang landfill in Mobile, Alabama. The direction, control and coordination of WM's operations take place at the landfill in Mobile, Alabama. The landfill is, therefore, the nerve center of WM, and its principal place of business for diversity purposes.

(Doc. 9 at 6). The Authority did not submit any evidence in support of its position.

In response, WM Mobile Bay asserts that Madison, Mississippi is the headquarters and "physical location" where its "officers direct, control, and coordinate its activities" and that it is the place where WM Mobile Bay's "accounts are kept, and where all major decisions, such as budgeting, pricing, regulatory compliance, and long-term planning for capital improvements are directed, controlled, and coordinated." (Doc. 11 at 4-5). WM Mobile Bay states that "[a]lthough the bulk of the business activities visible to the public take place at the Chastang Landfill, those activities are directed by the company's officers at its headquarters in Madison, Mississippi." (Doc. 11 at p. 5). In support, WM Mobile Bay provides the affidavit of its Vice President, David M. Myhan ("Myhan"), wherein Myhan states that Madison is where WM Mobile Bay's "officers direct, control, and coordinate WM Mobile Bay's activities" and keep all of its accounts. (Doc. 11-4). He also states as follows:

> Although WM Mobile Bay operates the Chastang Landfill in Mobile County, Alabama, that operation is directed, controlled, and coordinated out of WM Mobile Bay's headquarters in Madison, Mississippi. All major decisions, such as budgeting, pricing, regulatory compliance, long-term planning for capital

improvements, etc. are directed, controlled, and coordinated by the corporate officers at the Madison, Mississippi headquarters.

(Doc. 11-4 at 2-3).

Both parties, to some extent, rely on *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 175 L.Ed.2d 1029 (2010). In *Hertz*, the Supreme Court reviewed the history of corporate citizenship for diversity jurisdiction and stated that "[t]he phrase 'principal place of business' has proved more difficult to apply than its originators likely expected." (*Id*. at 1191). The Supreme Court recognized that some courts were applying a nerve center test for corporations with far-flung business activities and others were applying a general business activities approach and explained that "[t]he number of factors grew as courts explicitly combined aspects of the 'nerve center' and 'business activity' tests to look to a corporation's 'total activities,' sometimes to try to determine what treatises have described as the corporation's 'center of gravity.'" (*Id*. at 1191).[3]

The Supreme Court concluded that "principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities", which "in practice . . . should normally be the place where the corporation maintains its headquarters - - provided that the headquarters is the actual center of direction, control and coordination, *i.e.*, the 'nerve center', and not simply an office where the

---

[3] The Eleventh Circuit was applying "an initial determination as to whether 'a corporation's activities are centralized or decentralized' followed by an application of either the 'place of operations' or 'nerve center' test". (*Hertz,* 130 S.Ct. at 1192).

corporation holds its board meeting (for example, attended by directors and officers who have traveled there for the occasion)." (*Id*. at 1192.)

As cited, in part, by WM Mobile Bay, the Supreme Court also stated as follows:

> We also recognize that the use of a "nerve center" test may in some cases produce results that seem to cut against the basic rationale for 28 U.S.C. § 1332, see *supra*, at 1188. For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the "principal place of business" is New York. One could argue that members of the public in New Jersey would be *less* likely to be prejudiced against the corporation than persons in New York—yet the corporation will still be entitled to remove a New Jersey state case to federal court. And note too that the same corporation would be unable to remove a New York state case to federal court, despite the New York public's presumed prejudice against the corporation.

*Hertz Corp.,* 559 U.S. at 96, 130 S. Ct. at 1194.

As the moving party, the Authority bears the initial burden of showing that WM Mobile Bay's "nerve center" is at the Chastang landfill. In that regard, the Authority has made a conclusory statement that the Chastang landfill is where WM Mobile Bay directs, controls, and coordinates its operations. However, the Authority has not provided any evidence, by affidavit or other testimony, to support its statements. On the other hand, WM Mobile Bay, as the party asserting jurisdiction has "submit[ed] facts through some evidentiary method" that show "by a preponderance of the evidence" that this Court has subject matter jurisdiction by providing an

10

affidavit of its Vice President who has sworn that Madison, Mississippi is the "nerve center". *See EEOC v. Labor Solutions*, 2017 WL 1035682, at *1-2; (*See also* Doc. 11-4). As a result, the only evidence indicates that Madison, Mississippi is the nerve center. Accordingly, the undersigned finds that the parties are diverse and that this Court has subject matter jurisdiction. Therefore, it is recommended that the Authority's Motion to Dismiss based on lack of subject matter jurisdiction be denied.

## II.    Injunctive Relief

In Count I of its petition, WM Mobile Bay states that (1) it has suffered irreparable injury by the Authority's continued refusal to reimburse it for the subject expenses, (2) that it does not have an adequate remedy at law, (3) that the requested injunction would not overburden the Authority, and (4) that public interest would be served by entry of a an injunction because otherwise, the Courts would have to continue to adjudicate repeated lawsuits. (Doc. 1 at 4-5). Therefore, WM Mobile Bay requests this Court enter an injunction requiring the Authority to approve the reimbursement request dated April 6, 2016 and "to approve all future properly supported requests for reimbursement for the same categories of costs." (*Id*. at 5). In its Motion to Dismiss, the Authority contends that WM Mobile Bay's petition is due to be dismissed pursuant to Rule 12(b)(6) of the rules of Federal Procedure for failure to properly state a claim. More specifically, the Authority argues that WM Mobile's petition does not properly state a claim because WM Mobile (1)

11

has an adequate remedy at law for breach of contract and, therefore, cannot show that it has been irreparably harmed, (2) has not established success on the merits, and (3) has not shown that the benefit to WM Mobile Bay is outweighed by the hardship to the Authority.  (Doc. 9 at 3-5).

"According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391, 126 S.Ct. 1837, 1839, 164 L.Ed.2d 641 (2006)(citations omitted). The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits instead of a likelihood of success." *Siegel v. LePore*, 234 F.3d 1163, 1213 (11th Cir. 2000) (Carnes, J., dissenting).  In either case, an "injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' as to the four requisites." *Horton v. City of Augustine*, 272 F.3d 1318, 1326 (11th Cir. 2001).  The undersigned will address each of the required elements in turn.

### A.    Success on the Merits

WM Mobile Bay asserts that it has satisfied the first element of a claim for injunctive relief because it has previously been successful on the merits of a claim for breach of contract based on Section 6.6 for its previous reimbursement requests.  (Doc. 11 at 10).  The Authority argues that the previous suit's result is not definitive of the current action.  In that regard, the Authority states "Section 6.6 is lengthy and involves a number of different factors and conditions relating to its application [...] All claims for reimbursement of additional expenses must be considered in light of the routine operational expenses that WM is obligated to incur under the contract. With respect to WM's claims in the present action, the SWDA's consultant concluded and reported that the expenses did not meet the requirements for reimbursement." (Doc. 9 at 3-4).  In short, "[t]he issues and facts relating to the SWDA's denial of the reimbursement request in this case are different from those presented in the prior action."  (Doc. 9 at 5).

The parties do not dispute that Section 6.6 was at issue in the previous lawsuit.  Further, the Authority does not dispute that the previous litigation involved capital expenses and operational costs for the Chastang Landfill's gas management system, MAWSS surcharges for leachate pre-treatment and leachate analytical costs or that, in that action, those costs were found to be reimbursable to WM Mobile Bay under Section 6.6 of the Contract.   Rather, the Authority simply contends that the reimbursement requests in this action are not identical to those previously litigated.  (Doc. 9 at 5).  Based on the

13

pleadings in this action, the undersigned is not persuaded that WM Mobile Bay has met its burden of establishing that it will be successful on the merits of *this* action based solely on the fact that the Authority was successful in the previous action. Further, even if such a showing had been made as to the facts plead in this action, it could not be established that all anticipated future breaches would, likewise, be successful on the merits. As a result, the undersigned does not find that WM Mobile Bay has sufficiently established that it will be successful on the merits of this action, the first required element for injunctive relief.

### B.    Adequate Remedy at Law and Irreparable Harm

Assuming arguendo, that WM Mobile Bay had met its burden, an injunction would still not be warranted because WM Mobile Bay has not established that it does not have an adequate remedy at law.

The Authority contends that the petition is due to be dismissed because WM Mobile Bay has an adequate remedy at law, i.e. to bring a breach of contract action based on WM Mobile Bay's alleged breach and, therefore, asserts that WM Mobile Bay has not shown that it has suffered irreparable injury.   (Doc. 9 at 4).  WM Mobile Bay counters that because of the repeated nature of the Authority's breaches, a breach of contract claim is not adequate because it would "require WM Mobile Bay to continually file lawsuits to recover for each breach of the same contractual provision."  (Doc. 1 at 4; Doc. 11 at 10-11).  More specifically, WM Mobile Bay argues that "the

14

prospect of a multiplicity of suits is *precisely* the sort of irreparable harm that justifies injunctive relief for the preservation of public and private resources." (Doc. 11 at 11).

For an injunction to be entered, a plaintiff must establish irreparable harm. An injunction "is available not simply when the legal right asserted has been infringed, but only when that legal right has been infringed by an injury ... which will result in irreparable harm if the injunction does not issue." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1127 (11th Cir. 2005). "If the damages are calculable in money, then the injury is not irreparable." *Clark Const. Co., Inc. v. Pena*, 930 F.Supp. 1470, 1490 (N.D. Ala. 1196) *citing to Collins & Co., General Contractors, Inc. v. Claytor*, 476 F.Supp. 407, 410 (N.D. Ga. 1979). "The principal and overriding element of this prerequisite is irreparable harm resulting from the absence of an adequate remedy at law. Hence, the doctrine that the legal remedy must be inadequate before equity will act is inextricably intertwined with the irreparable injury element." (*Id*.) (internal citations omitted).

As an initial matter, WM Mobile Bay does not refute that it could bring a breach of contract action, a fact which, alone, significantly diminishes any argument that it has no adequate remedy at law. Instead, it argues that presumptive relief is appropriate because otherwise, it would have to continue to file suit each time the Authority "ignores its contractual obligations under Section 6.6." (Doc. 11 at 10). WM Mobile Bay contends,

therefore, that a breach of contract claim is inadequate and that the "multiplicity of suits" establishes irreparable harm. In support of it position, WM Mobile Bay cites to several cases from the Eighth and Second circuits relying on various other district court opinions which found irreparable injury and no adequate remedy at law based on the multiplicity of suits required to gain relief.[4]  However, while a multiplicity of suits may be a factor in determining whether irreparable harm exists, this Court finds that the cases cited by WM Mobile Bay are factually distinguishable from the present case, such that even if they were controlling, they would not be persuasive in the instant action.  Specifically, the cases relied on by WM Mobile Bay involved situations where damages would be difficult to calculate, or the number, identities, and physical locations, of potential parties were unknown, such that equitable relief would be inadequate; facts which are not present in the current action.

Further, despite the Authority's position which implies that there will, in fact, be multiple and continual lawsuits arising out of the Authority's failure to meet its contractual obligations under Section 6.6, there is no actual evidence that there will be multiple, repeated, or continual breaches

---

[4] *Lynch Corp. v. Omaha Nat. Bank*, 666 F.2d 1208, 1212 (8th Cir. 1981)(*citing Galela v. Onassis*, 353 F. Supp. 196, 235 (S.D.N.Y. 1972), modified on other grounds, 487 F.2d 986 (2d Cir. 1973)) (holding injury irreparable and that plaintiff had no adequate remedy at law "because a multiplicity of suits would be required to gain relief");*Ashland Oil, Inc. v. Gleave*, 540 F. Supp. 81, 86 (W.D.N.Y. 1982) (listing "a multiplicity of suits" as one of the "recognized factors that support a finding of irreparable harm"); *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C.D. Cal. 2007) (quoting DOUGLAS LAYCOCK,THE DEATH OF THE IRREPARABLE INJURY RULE,103 HARV. L. REV. 687, 714 (1990))("A legal remedy is inadequate if it would require a multiplicity of suits.'").

that will result in a multiplicity of suits.  Rather, the only information before this Court is that the contract was negotiated in 1993, twenty-four years ago and that prior to the instant action, there was one previous action - a record which does not support a likelihood of a multiplicity of suits.  Moreover, WM Mobile Bay has not set forth any facts to suggest that other non-litigated disputes currently exist or that additional future suits are viably anticipated, such that a lack of equitable relief would result in irreparable harm.

Even if the multiplicity argument set forth by WM Mobile Bay were compelling, it would not necessarily be cured by the presumptive relief WM Mobile Bay seeks.  Assuming, for the sake of argument, that this Court entered an order, requiring the Authority to "approve all future properly supported requests for reimbursement for the same categories of costs", as WM Mobile Bay requests, and that the Authority continued to breach Section 6.6, as WM Mobile Bay suggests it will, the need to return to the Court each time an alleged breach occurred would remain.  Specifically, while the requested reimbursement may fall under Section 6.6, there would remain a fact specific inquiry as to whether the request was "properly supported" and/or "for the same category of costs."  Therefore, even if injunctive relief were granted, instead of future fact specific actions for breach of contract, there would be future motions to enforce an injunction based on fact specific requests for reimbursements.  As a result, the injunctive relief, if granted, may eliminate a multiplicity of future suits but only because it would

simultaneously create an umbrella, i.e. a permanent injunction, under which all future disputes relating to breaches would have to be brought before this Court. Thus, in the present case, WM Mobile Bay's multiplicity of suits argument is not compelling. Rather, based on the fact that the instant petition relates to a dispute of a contract provision, between only two parties, for damages which can be calculated, the undersigned finds that WM Mobile Bay has an adequate remedy at law for breach of contract and it has not established irreparable injury.

### C.    Balance of Hardships and Public Interest

In its petition, WM Mobile Bay states that "[t]he public interest would be served by the entry of a permanent injunction, because it would relieve the courts of having to adjudicate a new lawsuit each time the Authority unjustly denies a reimbursement request, and it would relieve taxpayers of having to pay attorney fees to litigate issues that have already been resolved by this Court." (Doc. 1 at 5). In support of dismissal, the Authority states that "[t]he relief sought in the Petition would also deprive the SWDA of its rights under the contract to seek the advice of its consultant and consider whether the requested expenses are actually reimbursable as opposed to normal operating expenses that are the responsibility of WM. WM should not be allowed to circumvent its burden of proving the authenticity of its request, and any entitlement to reimbursement, through an injunction." (Doc. 9 at 5). In response, WM Mobile Bay argues that the hardship it will endure outweighs

18

the Authorities potential hardships.  Namely, WM Mobile Bay "is threatened with substantial and irreparable injury if a permanent injunction is not issued – the Authority's derogation of Section 6.6 on a continuous basis." (Doc. 11 at 11).  WM Mobile Bay additionally asserts that the Authority will not be harmed at all "since the injunction would merely require it to abide by the contractual obligations to which it has already agreed."  (*Id*. at 12).

WM Mobile Bay's argument as to the balance of hardships neglects to acknowledge the fact that whether reimbursements are due to WM Mobile Bay is dependent upon a fact specific inquiry under the contract and to issue injunctive relief would, as pointed out by the Authority, deprive the Authority of determining if the requested reimbursements are valid under Section 6.6. While WM Mobile Bay's argument suggests that an injunction would only serve to enforce the Authority to act in accordance with the Contract, the actual injunctive relief requested by WM Mobile Bay seeks to force the Authority to reimburse WM Mobile Bay for all requests for reimbursements, without distinction as to the validity of the requests.

WM Mobile Bay's argument that injunctive relief will save the taxpayers significant and unnecessary costs in legal fees is unpersuasive.[5] The presumptive relief requested, while eliminating the need to file repeated breach of contract suits, would result in this Court being tasked with

---

[5] WM Mobile additionally argues that there is no public interest in the Authority's continued breaches of its contract, while there is a significant public interest in advancing the contract laws of the State of Alabama.  (Doc. 11 at 12).  This is a sound argument.  However, it does not cure the fact that a breach of contract action is better suited to advance the contract laws of the State of Alabama than a Petition for Permanent Injunction.

determining whether future breaches would be subject to the requested injunction, thereby causing the parties and this Court to continue to litigate any future breaches by way of determining whether the Authority has run afoul of the injunction.  Such an outcome will not relieve this Court of adjudicating the issues and, therefore, WM Mobile Bay's argument offers very little in support of lessening the burden to the taxpaying public.

For the reasons set forth herein, above, it is recommended that the Authority's Motion to Dismiss (Doc. 9) be granted pursuant to Fed. R. Civ. Pro. 12(b)(6).

### D.   Remaining Grounds for Dismissal

Because the undersigned has recommended that the Petition for a Permanent Injunction (Doc. 1) be dismissed pursuant to Fed. R. Civ. Pro. 12(b)(6), the undersigned does not find it necessary to entertain the remaining grounds asserted by the Authority in support of dismissal.  *See Watkins v. Fairfield Nursing and Rehabilitation Center*, LLC, 2012 WL 1566228 *3 (N.D. Ala. April 26, 2012); *Shedd v. Wells Fargo Home Mortgage,* 2014 WL 6451245 *2 (S.D. Ala. November 17, 2014).[6]

---

[6] Namely, the Eleventh Amendment Immunity Argument set forth by the Authority is better reserved for when the issue is properly ripe before this Court, i.e., if and when a valid cause of action has been initiated. Next, whether or not a provision of the Contract is void is also an issue better suited for analysis at a later time, because this is not an action for breach of contract.  Lastly, because a discussion of whether or not WM Mobile Bay is required to and failed to participate in alternative dispute resolution does not alter the recommendation of dismissal of this action for failure to state a claim, such a discussion is not warranted at this time.

## CONCLUSION

For the reasons set forth herein above, it is recommended that Respondent's Motion to Dismiss Plaintiff's Petition for Permanent Injunction be denied pursuant to Rule 12(b)(1) and granted pursuant to Rule 12(b)(6).

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection

that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this 28th day of June, 2017.

/s/ Katherine P. Nelson
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**